# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOSUE JEROME WALTON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. CIV-09-281-F |
| ) | |
| JIM KEITH, Warden, ) | |
| ) | |
| Respondent. ) | |

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, brings this action pursuant to 28 U.S.C. § 2254, seeking habeas relief from his state court convictions. United States District Judge Stephen P. Friot re-referred this matter to the undersigned Magistrate Judge for consideration of Ground Two of the Petition. Supplemental briefs have been filed on behalf of both parties, and so the matter is ready for disposition.

## I. PROCEDURAL POSTURE

By this action, Petitioner challenges his convictions following a jury trial on five counts of robbery with a firearm. Case No. CF-2004-5476, District Court of Oklahoma County; Petition, 2-3.[1] Petitioner waived his right to have a jury determine his sentences, instead electing to allow the trial judge to determine them. Response, 1. The trial court sentenced Petitioner to thirty years imprisonment on each count, with the sentences to run concurrently. Id. On direct appeal, the Oklahoma Court of Criminal Appeals affirmed

---

[1]The page numbers used for the petition are the pre-printed numbers in the upper right hand corner of the "form" petition. Page 2 is actually the first page.

Petitioner's convictions. Walton v. State, No. F-2006-920 (Okla. Crim. App. Mar. 14, 2008) (attached to Response as Ex. 3); Petition, 3. Petitioner did not seek state post-conviction relief. Petition, 4.

In this action, Petitioner initially raised seven grounds for relief. In a previous Report and Recommendation, the undersigned recommended that the petition for a writ of habeas corpus be denied as to Grounds One, Three, Four, Five, Six and Seven. It was further recommended that consideration of Ground Two be deferred pending receipt of supplemental briefs. [Doc. No. 20]. That Report and Recommendation was adopted by Judge Friot on January 27, 2010, and the matter was re-referred to the undersigned for consideration of Ground Two. In Ground Two, Petitioner challenges the sufficiency of the evidence to Count Two – the robbery of Jason Thole. Petition, 7.

## II. FACTUAL BACKGROUND[2]

At around 10:30 p.m. on September 25, 2004, a number of masked gunmen entered an Applebee's restaurant in Oklahoma City and ordered employees and patrons to get on the floor. An assistant manager was forced at gunpoint to hand over money and other items that were in the office safe and the men took cash from the restaurant bar's cash drawer. At one point, the gunman who was demanding money from the assistant manager fired his gun into the ceiling above her head. The customers were also forced at gunpoint to turn over their

---

[2]This is intended only as general background, and is taken from the statements of facts in the briefs filed on direct appeal. Response, Ex. 1, 3-5; Response, Ex. 2, 2-5. Specific facts will be cited from the record as they become pertinent to the undersigned's consideration of the merits.

2

wallets. Various witnesses at the restaurant reported that anywhere from three to six men were involved.

After one of the gunmen who had remained at the front during the robbery yelled "time, time, we gotta go," the robbers left the restaurant and ran north. A witness who lived in a home near the restaurant saw three men run from the restaurant, across the parking lot and get into a white Nissan that was parked on the street adjacent to his window. Some police officers responded to the restaurant while others were looking for the white car.

A police officer in The Village, a nearby suburb through which it appeared the suspects might be heading, was monitoring scanner traffic and parked his cruiser to maintain a look out for the vehicle. Shortly thereafter, he saw a white car with a non-working tail light pass. He initiated a stop of the white car, but after he exited his cruiser the vehicle took off at a high rate of speed. The driver led several officers on a high speed chase that ended when the car lost control and crashed. The men exited the badly-damaged car and took off on foot, but three men were quickly apprehended. Petitioner was not one of the men apprehended at the scene. After the men had been captured, police officers found a shotgun laying next to the car, and found additional weapons, clothing, money, and other items connected to the robbery inside. A total of four guns were discovered: three were either in or beside the car, and a fourth was abandoned by the suspects as they ran from the wrecked vehicle. Also found were four sets of latex gloves and four ski-type masks.

It was determined that the car belonged to Petitioner's fiancé. She testified that there had been a barbeque party at their home on the day of the robbery, and that Petitioner had

fallen asleep drunk on the couch. She asked the guests to leave around 8:00 to 9:00 p.m., and woke up Petitioner to tell him to go to bed. After tidying up and relaxing, she joined Petitioner in bed around 10:00 to 10:15 p.m. When she awoke early the next day, she discovered her car missing and called in a report to police. She testified that Petitioner was there when she woke.

Petitioner later told an investigator that one of the men apprehended was a childhood friend, and that the other two were cousins. He also told the investigator that all three of the men were at his home for the barbeque on the day of the robbery. DNA consistent with Petitioner's was found on one of the ski-type masks that were discovered in the car, and he could not be excluded as the source of DNA on one of the latex gloves also found in the car. Petitioner was arrested seven months after the robbery.

### III. STANDARD GOVERNING PETITIONS FOR HABEAS CORPUS

For factual and legal issues that have been adjudicated in state court, a federal district court may only grant a writ of habeas corpus if the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A state court's determination is contrary to clearly established federal law if it applies a rule that contradicts the law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a Supreme Court decision, but arrives at a different result. Williams

v. Taylor, 529 U.S. 362, 405-406 (2000). A state court's determination involves an unreasonable application of clearly established federal law if it identifies the correct governing legal principle from Supreme Court decisions, but unreasonably applies that principle to the facts of the petitioner's case. Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

If a state court resolves issues in a summary disposition with little or no legal reasoning, a federal habeas court still owes deference to the result. Paine v. Massie, 339 F.3d 1194, 1198 (10th Cir. 2003). A state court's summary disposition must be upheld unless a federal habeas court is persuaded, after conducting an independent review of the record and pertinent federal law, that the state court's result "unreasonably applies clearly established federal law." Id. (quoting Aycox v. Lytle, 196 F.3d 1174, 1178 (10th Cir. 1999)).

## IV. DISCUSSION

### A. Introduction

Petitioner contends in Ground Two that the evidence admitted at his trial was not sufficient for a jury to have found the essential elements of first degree robbery with regard to one of the five counts. More specifically, he claims that there was no evidence connecting a wallet apparently belonging to a Jason Thole, which was the basis of the robbery charge in Count Two, to either Petitioner or the Applebee's robbery. Petition, 7; Supplemental Brief in Support of Petition, 6-7. Petitioner notes that Jason Thole was not a witness at his trial,

5

and there was no other evidence indicating that Jason Thole was at the Applebee's restaurant on the night of the robbery. Id. He claims that one of the essential elements of the crime of robbery is the taking of the property *from the person or immediate presence* of the one robbed. Supplemental Brief in Support of Petition, 6, n. 2.

Respondent argues that it can be logically inferred that Jason Thole was a victim of the Applebee's robbery:

> The evidence showed that something was throw[n] from the car during pursuit. A wallet belonging to Jason Thole was found in the same location. These facts reasonably and logically support[] the inference that the Jason Thole's wallet was taken from him by force or fear during the robbery the defendant had just committed, in which he or his co-defendant[]s were taking wallets from the restaurant[']s patrons."

Supplemental Response, 1-2. Quoting Black's Law Dictionary 781 (7th ed. 1999), Respondent notes that an inference is defined as "a conclusion reached by considering other facts and deducing a logical consequence from them." Supplemental Response, 2. He then claims that there are facts logically supporting the inference that Thole was a robbery victim:

> The petitioner was robbing a restaurant for the store money and the patron's wallets. The car the petitioner was fleeing in was pursued by the police. The police notice[d] someone in the car throw something from the car. The officer returned to where he believed the item was ejected. The officer found the wallet of Jason Thole. That Jason Thole's wallet was taken from him during the robbery is a "logical consequence" deduced from the given facts.

Id.

In rejecting Petitioner's claim of insufficiency of the evidence, the Oklahoma Court of Criminal Appeals stated:

> [Petitioner] contends that the evidence on Count 2, robbery with a

6

> firearm, was insufficient to support conviction because there was no direct evidence that the victim named in that count had his wallet taken from him at gunpoint. Direct evidence is not required for a jury to find a defendant guilty beyond a reasonable doubt. In total we find there was sufficient circumstantial evidence from which jurors could reasonably infer that the victim named in Count 2 had his wallet taken from him at gunpoint either by [Petitioner] or by his associates with whom he was operating in concert.

Response, Ex. 3, 3 (citations omitted). In order to be entitled to habeas relief on Ground Two, Petitioner must show that the Oklahoma Court of Criminal Appeals' decision was contrary to or an unreasonable application of Federal law, or that its decision was based on an unreasonable determination of the facts in light of the evidence presented at his trial.

### B. Habeas Consideration of an Insufficient Evidence Claim

Judicial review of Petitioner's habeas challenge to the sufficiency of the evidence presented at his trial "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 506 U.S. 390, 402 (1993). For habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Both direct and circumstantial evidence is considered in determining whether evidence is sufficient to support a conviction. Lucero v. Kerby, 133 F.3d 1299, 1312 (10th Cir. 1998). In applying this standard, the reviewing court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting Grubbs

7

v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993)). "The inquiry is based upon the entire record and the reasoning process actually used by the trier of fact, known or not, is not considered." Torres v. Mullin, 317 F.3d 1145, 1151 (10th Cir. 2003) (citation omitted).

These standards "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n.16. In Oklahoma, a person commits robbery with a firearm when he (1) wrongfully; (2) takes; (3) the personal property (4) of another, (5) from another; (6) by force or fear; (7) through the use of a firearm. Cummings v. Evans, 161 F.3d 610, 614 n.1 (10th Cir. 1998) (citing Okla. Stat. tit. 21, §§ 791, 801). The commentary following Oklahoma's uniform jury instruction for this offense further clarifies the fifth essential element: "It should be remembered, however, that no robbery has occurred unless the taking is from the *person or the immediate presence* of another. Thus the language "robs ... any place of business, residence or banking institution or any other place inhabited or attended by any person or persons at any time, either day or night" is surplusage. A bank cannot be robbed because a bank is not a person...." Committee Comments, OUJI-CR. 2nd, 4-144, OCCA Online, <http://www.okcca.net/online/oujis/oujisrvr.jsp?oc=OUJI-CR%204-144> (accessed June 9, 2010) (emphasis added).

In In re Winship, 397 U.S. 358, 364 (1970), the United States Supreme Court held that the Fourteenth Amendment's Due Process Clause protects a criminal defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." And, as noted, Jackson v. Virginia, 443 U.S.

8

307, 319 (1979) provides that sufficient evidence supports a conviction if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Under 28 U.S.C. 2254(d), a federal habeas court applies the Jackson standard with an additional layer of deference. Torres v. Lytle, 461 F.3d 1303, 1311 (10th Cir. 2006) (issue of sufficiency of the evidence primarily legal one and appropriate standard of deference forbids granting relief unless adjudication resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law).

Finally, circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction, but speculation and conjecture will not:

> While the jury may draw reasonable inferences from direct or circumstantial evidence, an inference must be more than speculation and conjecture to be reasonable.... A jury will not be allowed to engage in a degree of speculation and conjecture that renders its finding a guess or mere possibility. Such an inference is infirm because it is not based on the evidence.

Id. at 1313 (quoting United States v. Jones, 44 F.3d 860, 865 (10th Cir.1995)). For the following reasons, the undersigned finds that the Oklahoma Court of Criminal Appeals' denial of Petitioner's appeal "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1)).

### C. Analysis

With these standards in mind, the undersigned has carefully considered all of the evidence. From that review, the undersigned notes the following facts which might

9

conceivably bear on the inference that Jason Thole was a victim of the Applebee's robbery.

The car involved in the chase belonged to Petitioner's then-fiancé, Tymika Bowen. Trial Tr. Vol. I, p. 165; Trial Tr. Vol. III, p. 27. Ms. Bowen, who at that time of trial was married to Petitioner, testified that she and her husband both drove the car, and that it was not clean but had "a whole bunch of junk" in it, such as tools, clothes, work papers, and CDs." Id. at 36-37. Shelly Brown, assistant manager of the Applebee's testified that she gave one of the robbers money from the safe. Tr. Vol. I , 49-50. Two customers, Richard Hackler and Kirtis Lankford, testified that they each gave up their wallets to the robbers. Trial Tr. Vol. I, 82, 123. Mr. Hackler's wife, Rebecca Hackler, testified about the robbers entering the restaurant and shouting, but did not give any testimony about any particular property being taken, other than to say "[w]e were robbed." Trial Tr. Vol. I, 102-06. Another customer, Karen Thurgood, was in a party of ten seated at the same table as Kirtis Lankford; she testified that she removed Randy Vandenburg's wallet and gave it to one of the robbers because Mr. Vandenburg could not reach it himself due to the way he was wedged under one of the tables. Trial Tr. Vol. I, 133-34.

Richard Hackler testified that there were 20-25 people in the restaurant at the time of the robbery, and Ms. Thurgood estimated that there were about seven tables occupied at the time. Trial Tr. Vol. I, 78, 130. The only other eye witness to the robbery that was called as a witness was a server, Matthew Neal. Mr. Neal was sitting in a closed section finishing up his shift when the robbers entered. Trial Tr. Vol. I, 141. He testified that only one section of the restaurant was open, and that one of the robbers was going around with a bag

10

demanding watches, wallets, and jewelry. Id. at 146. He saw some customers give over their personal possessions, and remembers "a couple of them" at one big table giving up their wallets. Id. at 146-47. He had testified that some of the people at that big table were having trouble getting out from behind it so they could get on the floor as demanded. Trial Tr. Vol. I, 146.

Lieutenant Coffman was one of the police officers who pursued the robbers during the car chase. Trial Tr. Vol. II, 19-21. He testified on cross-examination that after the chase had ended, he reviewed another officer's dash cam video and saw what he thought was a wallet being thrown out the window. Trial Tr. Vol. II, 40. He testified that when he and the other officer, Sergeant Reece, went back to that location they found a checkbook laying on the road. Id. He stated: "We located it and kept anybody else from running over it and called for the Oklahoma City's technical investigator to come pick it up." Trial Tr. Vol. II, 40. Sergeant Lori Crowcroft, crime scene investigator, testified that she was informed that an item had been discarded by the robbers at some point during the chase; she went to the scene where the officers were guarding it, photographed it, and collected it. Trial Tr. Vol. II, 78-79. She testified that the item was a wallet and that it contained a social security card, driver's license, and a bank card all bearing the name "Jason L. Thole." Id. at 79-80.

The Respondent argues that it can be inferred that the wallet was taken from Jason L. Thole during the Applebee's robbery because (1) the robbers were taking wallets and personal items from the victims; (2) a wallet was found at the same location where the officers believed the dash cam video showed something being thrown from the robbers'

11

fleeing car; and (3) the wallet contained items belonging to Jason L. Thole. However, without any evidence that a Jason Thole was at the Applebee's on the night of the robbery, the Respondent's proffered inference is based only on speculation and conjecture. As such, the State failed to prove an essential element of the crime of robbery alleged in Count Two – that the wallet was taken from the person or presence of Jason Thole. As noted by the United States Supreme Court, a failure to prove the essential elements of a crime beyond a reasonable doubt renders a conviction for that crime a violation of the Due Process Clause of the Fourteenth Amendment:

> We have held that the Due Process Clause of the Fourteenth Amendment forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt. See Jackson, 443 U.S. at 316; In re Winship, 397 U.S. at 364. In this case, failure to possess a permit is a basic element of the crime of which Fiore was convicted. And the parties agree that the Commonwealth presented no evidence whatsoever to prove that basic element.

Fiore v. White 531 U.S. 225, 228-29, (2001) (some citations omitted). Thus, even with the deference afforded to state court decisions on this issue, courts have found constitutionally insufficient evidence in circumstances where proof of an essential element was based only on conjecture.

For example, in Torres, the Tenth Circuit considered whether the State produced sufficient evidence to support a conviction for witness retaliation. Torres, 461 F.3d at 1304. In Torres, the witness reported that he suspected the defendant of setting fire to one of his homes (a felony) on September 1, 1997. Id. at 1308. He also reported that the defendant attempted to burn a second house (a misdemeanor) on September 15, 1997. Id. No felony

charges were ever brought with regard to the first fire, but the defendant was convicted of misdemeanor property damage as a result of the second fire. Id. A couple of weeks after the misdemeanor conviction, the witness received a threatening letter which he believed was from the defendant. Id. At the retaliation trial, there was no evidence presented to show that the witness had previously testified about *both* the reported arson and the attempted arson that was the basis of the misdemeanor charge. Id. at 1313. Since an essential element of the crime of retaliation against a witness is that the witness was reporting a felony, testimony about only the attempted arson incident was not enough to support a conviction for retaliation. Id. at 1308.

Conceding the lack of direct proof, the State argued that because the witness did testify as to both events at the trial of the retaliation charge, the federal habeas court should infer that his testimony was the same at the misdemeanor trial. The Tenth Circuit rejected this position, stating:

> Even under AEDPA's exponential deference, we conclude that the evidence was not sufficient to convict Mr. Torres of retaliating against Mr. Medina for reporting the September 1, 1997, arson.
>
> ...
>
> Apparently conceding its error, the State ... argues that "[i]t is reasonable to infer from [Mr. Medina's] testimony to the felony jury that he also testified similarly before the misdemeanor jury, to explain why he was watching his second house on the night he witnessed Torres commit the criminal damage." But there was no evidentiary basis for such an inference. As we said in United States v. Jones, 44 F.3d 860, 865 (10th Cir.1995):
>
>> While the jury may draw reasonable inferences from direct or circumstantial evidence, an inference must be more than

13

> speculation and conjecture to be reasonable.... A jury will not be
> allowed to engage in a degree of speculation and conjecture that
> renders its finding a guess or mere possibility.

Torres, 461 F.3d at 1313. Thus, although it was logical to assume that the witness would have naturally referred to both incidents in the process of telling his story during the misdemeanor trial, there was no *evidence* that he had indeed done so. Likewise, in this case it may be logical to assume that the wallet thrown from the car during the post-robbery chase belonged to a victim of the robbery, but there is no evidence of that fact.

In another federal habeas action challenging a murder conviction, the Third Circuit Court of Appeals granted relief because evidence of the essential element of intent to kill was found to be based on speculation and thus constitutionally insufficient. Kamienski v. Hendricks, 332 Fed. Appx. 740, 751-752 (3rd Cir. May 28, 2009), cert. denied 130 S.Ct. 1168 (2010). In that case a witness testified as to the defendant's drug dealings with the victims, and to the fact that she had come upon the scene of the defendant and another man disposing of what appeared to be two bodies wrapped in blankets. She also testified that the defendant told her later that night that "he couldn't control what happened" and added that "Nick went first, Barbara didn't suffer." 332 Fed. Appx. at 743. Even with this evidence, the Court found that an inference of intent to kill was not sufficiently supported:

> We realize that "[i]nferences from established facts are accepted methods of
> proof when no direct evidence is available. It is [nevertheless] essential ... that
> there be a logical and convincing connection between the facts established and
> the conclusion inferred." When we asked the state to provide a supplemental
> brief on appeal identifying the evidence from which a jury could reasonably
> find Kamienski's shared intent to rob and/or murder (or assist in those crimes)
> the state repeatedly directed us to evidence showing his complicity in the drug

deal or evidence showing his involvement in the disposal of the bodies after the murders had been committed. Neither is sufficient to sustain Kamienski's murder convictions.

Kamienski, 322 Fed. Appx. at 750. As the Third Circuit explained:

> The government's arguments to the contrary rely not on inferences but on speculation. ... "[I]f the evidence tends to give equal or nearly equal circumstantial support to guilt and to innocence ... reversal is required: When the evidence is essentially in balance, a reasonable jury must necessarily entertain a reasonable doubt."

Id. at 750-751 (citations omitted). Based upon this flaw in the evidence, the Court found that the state court unreasonably applied Supreme Court precedent in denying the petitioner's appeal.

> The Appellate Division also *unreasonably applied the standard governing when inferences may be relied upon to establish elements of a criminal offense* beyond a reasonable doubt. That standard requires that the inference in question must be "more likely than not to flow" from the facts already established. The "more likely than not standard" is well established. It cannot be satisfied here because the record simply does not allow a reasonable juror to infer that Kamienski intended that the DeTournays be robbed or killed. Thus, the district court erred in concluding that the state court's decision to reinstate Kamienski's convictions for murder and felony murder was a reasonable application of Supreme Court precedent to the facts of this case.

Kamienski, 332 Fed.Appx. at 752 (emphasis added).

Here, as noted in the earlier Report and Recommendation, the fact that the wallet of Jason Thole was thrown from Petitioner's vehicle during the chase could logically support an inference that Petitioner was abandoning property that was evidence of *some* crime. However, this circumstance is equally consistent with an inference that Petitioner or one of the other occupants of the vehicle had come into the unlawful possession of the wallet in

15

some other way, such as a larceny or an earlier robbery. It could even have been a "lost and found" item taken during the robbery of the Applebee's assistant manager. The only circumstances linking this wallet to the Applebee's robbery are that other wallets were taken, and that this wallet was thrown from the car during the ensuing chase. However, without any evidence that Jason Thole was at the Applebee's, such as direct testimony from Thole, testimony of another customer or employee, or perhaps a credit card receipt, it is speculation that the wallet was taken from his person or presence during the armed robbery of the Applebee's that night. As stated in the context of a direct appeal, the Tenth Circuit has explained:

> Under different circumstances, this court has stated that "[a] jury may draw an inference only where that inference can be made beyond a reasonable doubt." This is certainly true where the inference goes to an ultimate conclusion underpinning criminal liability, e.g., satisfying an element of a crime necessary for conviction.

United States v. Summers, 414 F.3d 1287, 1295, n. 4 (10th Cir. 2005). The undersigned does not mean to suggest that direct testimony from Jason Thole was required. Indeed, in a similar case, another witness' testimony that the victim was present at the time of a bank robbery has been held to support an inference that she was robbed. Simms v. Cain No. 07-966, 2008 WL 624073, at *7 (E.D. La. Mar. 4, 2008) (evidence sufficient even though teller who was allegedly victim of bank robbery did not testify; other victims testified she was at bank working at one of teller stations that was robbed). However, here the State offered no evidence of any kind that would tend to show that the wallet had been taken from Jason Thole's *person or presence* during the Applebee's robbery.

16

"Although circumstantial evidence alone can support a conviction, there are times that it amounts to only a reasonable speculation and not to sufficient evidence." Newman v. Metrish, 543 F.3d 793, 796-797 (6th Cir. 2008) (citing cases), cert. denied 130 S.Ct. 1134 (2010). Although it might be reasonable to speculate that Jason Thole's wallet was taken from him during the robbery, it is speculation nonetheless.

Accordingly, it is recommended that Petitioner be granted a writ of habeas corpus with regard to his conviction on Count Two. Because this recommendation is based upon insufficiency of the evidence, it is further recommended that the writ of habeas corpus be granted unconditionally. See Douglas v. Workman 560 F.3d 1156, 1176 (10th Cir. 2009) (the classic example of irremediable error necessitating grant of unconditional writ is when new trial would violate Double Jeopardy Clause); Lockhart v. Nelson, 488 U.S. 33, 39 (1988) (when defendant's conviction is reversed on sole ground that evidence was insufficient Double Jeopardy Clause bars a retrial on same charge).

## RECOMMENDATION

Based on the foregoing findings, it is recommended that the petition for a writ of habeas corpus be granted as to Ground Two. In light of this recommendation, Petitioner's motion for extension of time [Doc. No. 28] and motion for appointment of counsel [Doc. No. 29] are hereby denied as moot. The parties are is advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court on or before June 29, 2010, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to file a timely objection to this Report and Recommendation

waives the right to appellate review of both factual and legal issues contained herein.  Moore v. United States, 950 F.2d 656 (10th Cir. 1991).  This Report and Recommendation disposes of all the issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 9th day of June, 2010**.

_____
DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE